UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PHILIP L. YAGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:05-CV-218-TS |
| ) | |
| THOMAS WOODWARD, individually and in his ) | |
| former capacity as a member of the Ossian Town ) | |
| Council, TIM ROHR, individually and in his ) | |
| former capacity as a member of the Ossian Town ) | |
| Council, VICTOR MUSCO, individually and in his ) | |
| former capacity as a member of the Ossian Town ) | |
| Council, BRIAN LANG, individually and in his ) | |
| official capacity as a member of the Ossian Town ) | |
| Council, ANGIE DIAL, individually and in her ) | |
| official capacity as a member of the Ossian Town ) | |
| Council, and MARY SCHAFER, individually and ) | |
| in her official capacity as a member of the Ossian ) | |
| Town Council; and OSSIAN, INDIANA, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

The Plaintiff, Philip L. Yager, worked for the Town of Ossian from 1978 until June 29, 2003. The Plaintiff sued the Defendants, the Town of Ossian and six former and current Ossian Town Council members, pursuant to 42 U.S.C. § 1983 for terminating him without due process.

This matter is before the Court on the Defendants' Motion for Summary Judgment [DE 10], filed on April 24, 2006.

**BACKGROUND**

On June 29, 2005, the Plaintiff filed his Verified Complaint against the Town of Ossian and six former or current members of the Ossian Town Council (Thomas Woodward, Tim Rohr, Victor

Musco, Brian Lang, Angie Dial, and Mary Schafer) for violating his Fourteenth Amendment due process rights when he was terminated without just cause and without being afforded the procedures for termination set forth in the Town's Personnel Manual. On July 14, 2005, the Defendant answered the Complaint.

On April 24, 2006, the Defendants moved for summary judgment on all the Plaintiff's claims asserting that (1) he waived any due process claim when he voluntarily terminated his employment; and (2) no process was due because he did not have a protected property interest in continued employment with the Town. The premise of the Defendants' first argument is that, contrary to the Plaintiff's assertion that he had three different jobs with the Town, he only held one position and when he voluntarily resigned from that position, he waived any due process rights. The Defendants' second argument is that even if the Plaintiff had more than one position, no contract or state law granted him a legitimate claim to continued employment in these positions.

The Plaintiff, in his Response to the Defendants' Motion for Summary Judgment, filed on June 13, 2006, maintains that whether he held three jobs or one is a genuine issue of material fact that precludes summary judgment on the Defendants' waiver argument. The Plaintiff also submits that the Personnel Manual created a Fourteenth Amendment property interest and that the Defendants' argument on this point is contrary to controlling case law.

On June 23, 2006, the Defendants filed their Reply.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**MATERIAL FACTS**

The parties dispute which position or positions that the Plaintiff held with the Town of Ossian on June 9, 2003, when the Council accepted his resignation. The Defendants maintain that the Town employed the Plaintiff as its Town Services Director, a position the Council created in 1997. Thus, when the Plaintiff tendered his resignation for that position, and the Council accepted it without offering another position, he was no longer employed by the Town in any capacity. The Plaintiff contends that he was not only the Town Services Director, but also the Certified Operator of the Sewer Department, and the Certified Operator of the Water Department. Because his letter to the Council stated his intention to resign from the Town Services Director position but to remain in the other two capacities, the Council could not terminate him from the sewer and water department without just cause and before following the procedures set forth in the Town's Personnel Manual.

**A.    Job Positions**

In 1978, the Town of Ossian hired the Plaintiff as a full time employee in general maintenance. In 1982, the Plaintiff obtained his state certification in waste water treatment and became the Town's Certified operator of the Sewer Department. In 1982, the Plaintiff obtained another state certificate, as a water works operator, and became the Town's Certified Operator of the Water Department. The Town maintained a job description for both of these positions. There is no evidence that the Town ever officially rescinded these job descriptions.

However, in 1997, the Town created a new job, Town Services Director. Mary Shafer, the Town Clerk-Treasurer, testified in her deposition that the goal of the Town Services Director

position was to combine the Town's supervisory positions into one managerial position. (Shafer Dep. at 51.) According to the written job description the Council developed, the Town Services Director would supervise and direct personnel in the water and sewer departments as well as in "Street; Utilities Assistant/Maintenance; Park and others as required." (Town Services Director Job Description, Span and Control.) The person in this job was required to have a license in water and sewer, or the ability to obtain the license within a reasonable time period.

In July 1997, the Town hired the Plaintiff as the Town Services Director.[1] In this position, the Plaintiff continued to perform the same sewer and water department duties he had previously performed in addition to the new duties required by his job. He received a single paycheck from the Town of Ossian for the performance of his duties.

**B.     Employment Conditions**

The Plaintiff came to believe that the Town was not fairly compensating him for his work. The Plaintiff assumed that when he became the Town Services Director, the Town would hire certified operators for the sewer and water departments. In January 1999, the Plaintiff met with two of the Council members, Defendant Victor Musco and Larry Brown, to discuss his compensation. The Plaintiff stated in his deposition that he told Musco and Brown that he thought it was unfair that he was still running the sewer and water departments, but not being compensated for it, and that they agreed to discuss the issue with the other Council members.

The Plaintiff and the Council reached an agreement and in 1999, the Town amended the Town Services Director written job description to add an essential job function:

---

[1] The Plaintiff applied for the position. The record does not reveal what the status of the Plaintiff's employment would have become if the Town did not award him the Services Director job.

> Be responsible to sign monthly water and/or sewer report(s) if for any reason a certified operator is not available to sign the monthly water and/or sewer reports. The monthly compensation for signing the monthly water and/or sewer reports of $300 per utility will be paid to whomever signs the monthly water and/or sewer reports.

(Amended Town Services Director Job Description.) After this provision went into effect, the Plaintiff's job duties and responsibilities did not change, but the manner of his compensation did. He began receiving a separate $600 paycheck at the end of the month for signing the monthly reports. The 1999 amendment also clarified that the Town Services Director was a salaried position exempt from the overtime provisions of the Fair Labor Standards Act.

As the Plaintiff continued in his employment, his relationship with the Council was not without conflict. The Plaintiff believed that the Council did not provide enough personnel and resources for him to satisfactorily perform his duties. The Council had its own complaints, as evidenced by a letter it sent to the Plaintiff on August 20, 2001, in which it detailed various aspects of the Plaintiff's performance that it considered defective. The Council set forth the areas that needed improvement and informed the Plaintiff that any further incidents would result in "further discipline up to and including termination." (Yager Dep., Ex. F. at 2.) During a Town Council meeting on April 21, 2003, the Council informed the Plaintiff that he was to be in his office from 7:00 a.m. to 3:30 p.m., Monday through Friday. The Plaintiff believed that this requirement would make it difficult for him to perform his job duties. On April 21, 2003, the Plaintiff's yearly review reiterated the requirement to work from 7:00 to 3:30 and added that he was also to work any additional hours that were necessary to fulfill his job requirements. He was advised that failure to comply with the changes in his work requirements could subject him to disciplinary action, suspension without pay, or termination.

C.     **Resignation Letter**

On June 9, 2003, the Plaintiff expressed his intention to resign as the Town Services Director. He did so during a Council meeting where he gave each member a copy of a letter he drafted and read it out loud to them. The letter began:

> I am submitting this document dated June 9, 2003 to inform the Ossian Town Council of my decision to resign the Services Director Position for the Town of Ossian. It is my intention to stay on in the other capacities that I serve for the Town, but in order to serve in those positions well, I cannot continue to be Services Director. Being the Certified Operator of both the Sewer Department and the Water Department, demands that I focus on these two jobs in order to do them both well.

(Yager Dep., Ex. H, ¶ 1.)

D.     **Council's Response to Resignation Letter**

The Council took the Plaintiff's resignation under advisement. On June 29, 2003, the Council held a meeting and voted 4 to 1 to accept the Plaintiff's resignation. It did not create any new positions and considered the Plaintiff's employment with the Town terminated.

The Council believed that the work the Plaintiff performed as the certified operator of the water and sewer department were within his job description as Town Services Director. Council member Lang testified in his deposition that "the job description of the Town Services Director, this—signing the water reports and the waste water reports, that was all included under that job description. And I mean, I—that was one job." (Lang Dep. at 48.) Lang recognized the implication in the Plaintiff's resignation letter that he had more than one job with the Town, but disagreed that this was his actual employment status. (Lang Dep. at 47–48.) Council member Dial stated in her deposition that the Town Services Director job included overseeing the water, sewer, park, and street departments and encompassed preparing the water and sewer reports that the State required. (Dial

7

Dep. at 62–63.) She believed that placing the Plaintiff in a position with the sewer or water department would have required terminating another employee or creating an entirely new position. (Dial Dep. at 72.) Council Member Woodward testified that he did not consider the Plaintiff's job as certified operator of the sewer or water departments to be separate from his job as Town Services Director. (Woodward Dep. at 79.) He too thought that the Council would have to create a new position to honor the Plaintiff's request that he only perform water and sewer duties. (Woodward Dep. at 91, 101.) When Council member Rohr was asked whether the Plaintiff was performing three jobs for the Town or one, he answered that it was one position and that the work related to the sewer and water fell under the Services Director position. (Rohr Dep. at 14–15.)

The only member of the Council who did not vote in favor of accepting the resignation was Council member Musco. Although he did not believe that signing the water and sewer reports was a separate job from the Services Director position (Musco Dep. at 28–29), or that the Plaintiff had three different jobs instead of one (Musco Dep. at 37–38, 51), he did believe that the Plaintiff intended only to resign as the Town Services Director and still wanted to work for the Town in the water and sewer departments (Musco Dep. at 37, 46).

After it voted to accept his resignation, Defendant Woodward called the Plaintiff to inform him of the Council's decision that it was no longer going to use his services. The Plaintiff asked Woodward to put the decision in writing. A letter dated June 30 advised the Plaintiff that the "Ossian Town Council accepted your resignation effective June 29, 2003, and there are no other positions." (Musco Dep., Ex. 12.)

**E.     Personnel Manual**

The Plaintiff believes that the Council's decision was a termination from his positions as the Certified Operator of the Sewer Department and as the Certified Operator of the Water Department. He also believes that, as an employee covered by the Ossian Personnel Manual, he could only be terminated for just cause and with due process. The Plaintiff points to Section 3:04 of the Personnel Manual:

> B.   In the event that disciplinary action must be taken against an employee, it will be for just cause and normally in a progressive manner in an attempt to correct an employee's behavior, except in those cases of gross or serious misconduct where an employee may be subject to suspension, reduction, or removal from employment for a first offense.
>
> C.   [Setting forth progressive discipline.]
>
> D.   In cases of possible suspension without pay, reduction in pay or position, or termination, an employee shall be notified of the charges in advance and be afforded the opportunity to present evidence and witnesses on his or her behalf prior to disciplinary action before an individual not directly related to the charges. The employee may also be represented by another employee if so requested.

(Dial Dep., Ex. 1 at 38.)

## DISCUSSION

Due process provides that an employee with a property interest in his job is entitled to some form of notice and hearing prior to termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The first issue raised by the Defendants' Motion for Summary Judgment is whether the requirements of due process were ever triggered in this case.

**A.   Resignation's Affect on the Plaintiff's Due Process Claim**

"The principle that an employee with a property interest in his job is entitled to some type

of [procedural due process] rests on the assumption that his employer has taken some action to deprive him of his job." *Flynn v. Sandahl*, 58 F.3d 283, 289 (7th Cir. 1995). Thus, if an employee resigns voluntarily, "there is no deprivation and so no right to a hearing." *Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir. 1988) (distinguishing voluntary resignation from types of job termination that may be considered a deprivation in a constitutional sense: outright discharge; coerced resignation; constructive discharge; and constructive resignation); *see also Graehiling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995) (stating that an employee who resigns has decided not to avail himself of due process protections and cannot complain); *Hudson v. City of Chi.*, 2003 WL 21230835, at *8 (N.D. Ill. May 28, 2003) ("It is axiomatic that, if an employee voluntarily resigned from his employment, he relinquished rather than was deprived of his property interest in continued employment.").

In most due process cases involving a purported resignation, the issue before the court is whether the resignation was coerced by the employer and thus, akin to a discharge for due process purposes. Here, the issue is not the voluntariness of the Plaintiff's resignation, but the scope of his resignation. As stated above, the Plaintiff contends that, since 1997, he has held three different jobs with the Town and that his resignation only affected one of these positions.[2] The Defendants maintain that the Plaintiff's job as the Services Director was his only job. When he resigned from this position, the only way he could continue serving in the sewer and water departments is if the Council created a new position.

To survive summary judgment on this point, the Plaintiff must establish that whether he held

---

[2] The Plaintiff has consistently advanced this argument. Although he also alleged in his Complaint that his resignation from his job as the Town Services Director was forced by the intolerable working conditions created by the Council, the Plaintiff appears to have abandoned this argument. He does not attempt to support this allegation in response to the Defendants' Motion for Summary Judgment.

one job or three jobs on June 9, 2003, is a material dispute. To this end, the Plaintiff points to three pieces of evidence: (1) his own testimony that he was performing three jobs; (2) the testimony of Town Council member Musco that the operator jobs still existed and that the Plaintiff was performing them; and (3) the testimony of Town Council member Rohr that the Plaintiff was performing the job duties of both certified operator positions. (Pf.'s Br. at 13.)

      The Court finds that these pieces of evidence skirt the real issue. No one disputes that the Plaintiff was performing the duties set forth in the job descriptions for the certified operator positions. The Defendants' position is not that the Plaintiff did not perform these duties, but that he did so in his capacity as the Town Services Director. Musco and Rohr, whose testimony the Plaintiff relies on, each stated that the Plaintiff had one job with the Town, as the Services Director, and that his work in the sewer and water departments was part of that job. (Musco Dep. at 28–29, 37–38, 51); (Rohr Dep. at 14–15). This testimony squares with the testimony from the other Council members. It is also in accord with the written job description, which provided that the Town Services Director was to supervise and direct personnel in the water, sewer, street, utilities assistant/maintenance, and parks departments. The provision for compensation of $600 per month for signing water and sewer reports was also contained in this job description. The Plaintiff indeed received this compensation—not because he held separate positions as the Certified Operator for the Water and Sewer Department that came with their own compensation terms—but because he fulfilled the Services Director positions requirement to sign such reports.

      Given the scope of the Services Directors' duties and responsibilities, there was no need for a separate Certified Operator of the Water Department or Certified Operator of the Sewer Department. The Plaintiff wanted to go back to the way it was before 1997, when he was in charge

11

of sewer and water only. The parties do not dispute that this was the Plaintiff's intent; his resignation letter stated that he wanted to resign as the Services Director but still operate the water and sewer departments. However, these stand-alone positions no longer existed, regardless of the Plaintiff's subjective notions. They were incorporated into the position created in 1997 to oversee several of the Town's departments. Therefore, the Council's only choice, if it was to accommodate the Plaintiff, would be to accept his resignation for the Services Director position and carve out certain of the Director's duties for the Plaintiff and leave the others for another person (the new Town Services Director) to fulfill. As soon as the Town Council accepted the Plaintiff's resignation and opted not to create any new position, the Plaintiff was no longer employed by the Town in any capacity. The Plaintiff abandoned his due process rights when he submitted his voluntary resignation.

The Court is aware that it must not determine credibility, weigh the evidence, or decide which inferences to draw from the facts when considering a motion for summary judgment. This case, however, does not require the Court to step outside its proper role. The Court has not deemed one party or witness more credible than another. The Plaintiff's testimony supports his view of the nature of his employment and the Defendants' testimony supports their view. There was a misunderstanding between the parties but this misunderstanding cannot support an inference that the Plaintiff actually held three separate and distinct positions. It can only support an inference that the Plaintiff believed he held three jobs. The Plaintiff's belief in this regard is not enough. The Town Council, as the governing body, had the responsibility to create and define the contours of the positions required to run the Town's operations.

It is the Plaintiff's burden to present evidence that it was the Defendants who deprived him

of a protected interest. The Plaintiff has not established that his resignation was anything less than a forfeiture of his entire property interest, regardless of his mistaken belief about the nature of his employment. The requirements of due process were not triggered and the Plaintiff's § 1983 claim fails as a matter of law.

**B.     Constitutionally Protected Property Interest in Continued Employment**

The Defendants argue that even if the Council's acceptance of the Plaintiff's resignation did not terminate his employment, he did not have a protected property interest in continued employment with the Town. Accordingly, he was not entitled to any due process. The Plaintiff contends that Section 3:04 of the Personnel Manual created just such an interest and defeats the Defendants' claim for summary judgment. Because the Court has determined that the Plaintiff voluntarily resigned from his employment, it need not decide whether he had a protected interest in continued employment.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 10] is GRANTED. Judgment will be entered in favor of the Defendants and against the Plaintiff.

SO ORDERED on September 12, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT